J-A10045-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MILL CITY MORTGAGE LOAN TRUST 2019-I, WILMINGTON SAVINGS FUND SOCIETY FSB, AS TRUSTEE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRUCE E. IRRGANG | : | No. 15 EDA 2025 |
| Appellant | : | |

Appeal from the Judgment Entered December 13, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2021-01715-RC

BEFORE:   STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 14, 2026**

Appellant Bruce E. Irrgang appeals the judgment entered on December 13, 2024 by the Court of Common Pleas of Chester County in this mortgage foreclosure action brought by Mill City Mortgage Loan Trust 2019-1, Wilmington Savings Fund Society FSB, as Trustee ("Mill City") in regards to the note and mortgage associated with the property located at 655 North Wayne Avenue, Wayne, PA ("the Property").  We affirm.

The trial court summarized the factual background of this case as follows:

> On March 19, 1999, [Appellant] executed a promissory note ("Note") in favor of [Mill City's] predecessor in interest, Summit Bank, in the principal amount of $ 1,950,000.00 with interest at a rate of 7.375 percent per annum. Exhibit P-2. The Note is indorsed

_____

[*] Former Justice specially assigned to the Superior Court.

in blank by virtue of an allonge stapled to the Note. *Id*. The Note is secured by a mortgage on the Property (the "Mortgage"), which was recorded on March 26, 1999 in the Chester County Office of Recorder of Deeds in Book 4532, Page 0818, et seq. Exhibit P-3.

The Mortgage provides that "Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note." *Id*. The Mortgage further reads:

> If Borrower fails to perform the covenants and agreements contained in this Security Instrument, ..., then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs.... Any amounts disbursed by the Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.

*Id*. Pursuant to Section 21 of the Mortgage, upon notice of default to borrower and failure to cure, the Lender "at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding." *Id*. Section 21 of the Mortgage provides that the "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable Law." *Id*.

The Note and Mortgage were modified by a Loan Modification Agreement executed on August 18, 2016 which adjusted the unpaid principal balance to $ 2,813,791.85 with $13,791.85 deferred. Additionally, the Loan Modification Agreement reduced the interest rate to 4.5000% and extended the maturity date to August 1, 2056. Exhibit P-13. [Mill City] further produced the original Note indorsed in blank. Exhibit P-2.

[Appellant] defaulted under the terms of the Note and Mortgage as modified by the Loan Modification Agreement by failing to make the monthly installment payment due on February 1, 2020 and has failed to pay the monthly installments due thereafter. Exhibit P-14. On April 7, 2020, Notice under Act 91 was sent to [Appellant] at his last known address and the

> Mortgaged Premises that the subject loan is in default and that to cure the default he must pay $57,605.71 within thirty (30) days. Exhibit P-15. Defendant failed to cure the default as required by the Notice.

Trial Court Order and Opinion (T.C.O.), 8/20/24, at 2-3.

Throughout the course of the loan, the Note and Mortgage were transferred numerous times before ultimately ending in possession of Mill City. On March 16, 2021, Mill City filed a complaint in mortgage foreclosure and subsequently amended their complaint on July 8, 2021. On November 15, 2021, Appellant filed an answer with new matter and a counterclaim to the amended complaint. On December 27, 2021, Appellant filed an answer with new matter removing the counterclaim. On January 14, 2022, Mill City filed a reply to Appellant's new matter. Thereafter, Appellant filed two separate motions for summary judgment, both of which the trial court denied.

The trial court held a bench trial on May 14, 2024 at which Mill City presented the testimony of Janet Gioello, a litigation representative at Fay Servicing, LLC ("Fay"), the loan servicer and attorney in fact for Mill City. Gioello presented the original Note, which had been indorsed in blank through an attached allonge.[1] Exhibit 2; Notes of Testimony (N.T.), 5/14/24, at 14-15. Mill City presented the chain of recorded transfers of the Mortgage, which the trial court cited as follows:

> See Exhibit P-4 (Assignment of Mortgage from Bank of America, N.A. s/b/m to Fleet National Bank s/b/m to Summit Bank to Bank

---

[1] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary (12th ed., 2024).

- 3 -

of America, N.A. dated February 13, 2012 and recorded on February 16, 2012 in Book 8360, Page 2044); Exhibit P-5 (Assignment of Mortgage from Summit Bank to Bank of America, N.A. dated November 23, 2011 and recorded on April 27, 2012 in Book 8412, Page 1922); Exhibit P-6 (Assignment of Mortgage from Bank of America, N.A. to Ventures Trust 2013-I-H-R by MCM Capital Partners LLC, its Trustee, dated November 18, 2014 and recorded on February 11, 2015 in Book 9056, Page 1727); Exhibit P-7 (Assignment of Mortgage from Ventures Trust 2013- 1-H-R by MCM Capital Partners LLC, its Trustee, by Meridian Asset Services, Inc., its Attorney-in-Fact to Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, not individually but as Trustee for Hilldale Trust, dated October 9, 2017 and recorded on January 8, 2018, in Book 9678, Page: 2128); Exhibit P-8 (Corrective Assignment of Mortgage from Bank of America, National Association, successor by merger to Summit Bank to Bank of America, N.A., dated June 28, 2019 and recorded on August 8, 2019 in Book: 9976, Page: 585, intended to correct the assignor's name on Plaintiff's Exhibit P-5, the Assignment recorded on April 27, 2012 in Book 8412, Page 1922); Exhibit P-9 (Assignment of Mortgage from Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, not individually but as Trustee for Hilldale Trust, by Meridian Asset Services, LLC, its Attorney-in-Fact to DLJ Mortgage Capital, Inc., dated May 14, 2019 and recorded on August 22, 2019, in Book 9985, Page 966); Exhibit P-10 (Assignment of Mortgage from DLJ Mortgage Capital, Inc. to U.S. Bank Trust National Association, as Trustee of CVF III Mortgage Loan Trust II, dated April 8, 2019 and recorded on August 22, 2019 in Book 9985, Page 970); Exhibit P-11 (Assignment of Mortgage from U.S. Bank Trust National Association, as Trustee of CVF III Mortgage Loan Trust II, by Meridian Asset Services, LLC, its Attorney-in-Fact to Mill City Mortgage Loan Trust 2019-1 dated September 25, 2019 and recorded on October 14, 2019 in Book 10021, Page: 70); Exhibit 12 (Assignment of Mortgage from Mill City Mortgage Loan Trust 2019-1 to Mill City Mortgage Loan Trust 2019-1, Wilmington Savings Fund Society FSB as Trustee, dated February 25, 2021 and recorded on March 15, 2021 in Book 10475, Page 769).

T.C.O. at 4-5.

As of the date of trial, Appellant did not dispute that he failed to make any of his regular installment payments since the missed installment payment

on February 1, 2020. At the conclusion of trial, the trial court gave the parties an opportunity to submit proposed findings of fact and conclusions of law.

On August 20, 2024, the trial court entered an order and opinion in which it found in favor of Mill City and against Appellant in the amount of $3,491,532.07 plus additional interest, costs, and charges under the Mortgage. On August 29, 2024, Appellant filed a motion for post-trial relief. On November 19, 2024, the trial court denied the motion for post-trial relief. On December 13, 2024, Mill City filed a Praecipe for Judgment, and on the same date, the trial court prothonotary entered judgment in favor of Mill City in the amount of $3,562,635.73. This timely appeal followed.[2]

Appellant raises the following issues for review on appeal:

1. Was the trial court's verdict against the weight of the evidence and/or based on insufficient evidence because Appellee did not establish it was a holder of the note?

2. Was the trial court's verdict against the weight of the evidence and/or based on insufficient evidence because Appellee did not establish it had enforcement rights under the note?

3. Was the trial court's verdict against the weight of the evidence and/or based on insufficient evidence because possession of the note does not translate into enforceability?

_____

[2] Appellant purported to appeal from the trial court's November 19, 2024 order denying his motion for post-trial relief. Ordinarily, an appeal properly lies from the entry of judgment, not from the order denying post-trial motions. **_See Johnston the Florist, Inc. v. TEDCO Constr. Corpo._**, 657 A.2d 511 (Pa. Super. 1995). As noted above, the trial court entered judgment in favor of Mill City upon their filing of a praecipe. Given that Appellant filed his notice of appeal on December 17, 2024, the instant appeal is properly before this Court. We have corrected the caption accordingly.

4. Was the trial court's verdict against the weight of the evidence and/or based on insufficient evidence because Appellee did not establish it was in possession of the note when the case below was commenced?

5. Was the trial court's verdict against the weight of the evidence and/or based on insufficient evidence because Appellee did not establish the allonge was permanently and securely attached to the note as required?

6. Was the trial court's verdict against the weight of the evidence and/or based on insufficient evidence because it was based on inadmissible hearsay records from third parties?

7. Was the trial court's verdict against the weight of the evidence and/or based on insufficient evidence because Appellee did not establish its right to enforce the modification?

8. Was the trial court's verdict against the weight of the evidence and/or based on insufficient evidence because the trial court should have allowed Appellant to file a response to Appellee's proposed findings of fact and conclusions of law?

Appellant's Brief, at 3-5 (reordered for review).

Several of Appellant's claims challenge the trial court's finding that Mill City established that it was the current holder of the Note. As noted above, Mill City presented at trial the original Note which was indorsed in blank through the attached Allonge. Exhibit 2; Notes of Testimony (N.T.), 5/14/24, at 14-15.

Before we review Appellant's specific arguments, we set forth the following foundational principles. Under the Pennsylvania Uniform Commercial Code ("UCC"), the note securing a mortgage is a negotiable instrument. *JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1266 (Pa. Super. 2013). The definition of a "holder" in the Pennsylvania UCC includes "the person in possession of a negotiable instrument that is payable

either to the bearer or to an identified person that is the person in possession."

13 Pa.C.S.A. § 1201. The Pennsylvania UCC defines "bearer" as *inter alia* "[a] person in possession of a negotiable instrument … that is payable to bearer or indorsed in blank." 13 Pa.C.S.A. § 1201. The Pennsylvania UCC further delineates the distinction between a special indorsement and a blank indorsement:

> **(a) Special indorsement.--**If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement." When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person. The principles stated in section 3110 (relating to identification of person to whom instrument is payable) apply to special indorsements.

> **(b) Blank indorsement.--**If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement." *When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.*

13 Pa.C.S.A. § 3205 (emphasis added).

Turning to Appellant's specific arguments, Appellant argues that Mill City failed to prove that it possessed the Note at the commencement of the litigation. However, Appellant offers no authority to show that a plaintiff in a mortgage foreclosure action is required to provide proof of its possession of the relevant note upon the commencement of the action. Our Rules of Civil Procedure contain no such requirement but instead set forth the following for a proper complaint in mortgage foreclosure:

(a) The plaintiff shall set forth in the complaint:

(1) the parties to and the date of the mortgage, and of any assignments, and a statement of the place of record of the mortgage and assignments;

(2) a description of the land subject to the mortgage;

(3) the names, addresses and interest of the defendants in the action and that the present real owner is unknown if the real owner is not made a party;

(4) a specific averment of default;

(5) an itemized statement of the amount due; and

(6) a demand for judgment for the amount due.

Pa.R.C.P. 1147(a). *See also **U.S. Bank N.A. v. Mallory***, 982 A.2d 986, 993 (Pa. Super. 2009) (finding Rule 1147 "does not require that a party have a recorded assignment as a prerequisite to filing a complaint in mortgage foreclosure"). As such, Appellant is not entitled to relief on this claim.

Appellant also claims that Mill City failed to establish the timing of the indorsement of the Note, such that it had been indorsed when Mill City received it or when this action was commenced. In support of this argument, Appellant cites the following provisions in the Pennsylvania UCC:

**§ 3203. Transfer of instrument; rights acquired by transfer**

**(a) When transfer effected.--**An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

**(b) Rights obtained upon transfer of instrument.--**Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

**(c) Right of transferee to demand indorsement.--**Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of indorsement by the transferor, the transferee has a specifically enforceable right to the unqualified indorsement of the transferor, but negotiation of the instrument does not occur until the indorsement is made.

13 Pa.C.S.A. § 3203.

Again, Appellant has presented no authority to support his claim that a party seeking to enforce a note must prove that the note was endorsed when that party received it. Appellant's citation to Section 3203 does not support this claim as it specifically states that "negotiation of the instrument does not occur *until* the indorsement is made." 13 Pa.C.S.A. § 3203(c) (emphasis added). Thus, Section 3203 does not provide that an indorsement that was made subsequent to the transfer of the negotiable instrument is invalid, but merely indicates that negotiation of the note cannot be completed until the indorsement has been made.

Although Appellant does not challenge the trial court's finding that Mill City presented the original Note, Mortgage, and Allonge indorsed in blank at trial,[3] Appellant argues that the trial court erred in finding the Note to be enforceable as defense counsel alleged that the Allonge was not attached to the note when he reviewed the case file at the commencement of this case in

_____

[3] Although Appellant's counsel suggested to this Court at oral argument that Mill City had not presented the original Note at trial, this assertion is belied by the trial record, in which Appellant's counsel did not object to Mill City's presentation of the original Note. Appellant does not include any argument in his appellate brief to suggest that Mill City had not presented the trial court the original Note for review.

2022. Appellant argues that the Note was not properly indorsed as the Allonge had to be affixed to the note at the time Mill City received it in order for Mill City to have enforcement rights.

However, the trial court, acting as fact finder, considered Appellant's argument, but nevertheless concluded that the Allonge had been attached to the Note. The trial court explained as follows:

> the Allonge, was, in fact, attached to the indorsed Note even if the Allonge was detached at some point in the same file folder. Defense counsel reviewed the Note and Allonge at the same time and the Allonge shows clear marks of prior stapling. The court finds credible that it was detached during the course of photocopying or otherwise inspecting but remained with the Note and file. Regardless, given the production of the original Note at trial, [Mill City] has the necessary standing to pursue its claims.

T.C.O. at 7. Given that the record supports the trial court's finding that there was evidence that the Note and Allonge were physically attached to each other and were stored together in the same file, we need not disturb its finding that the Allonge had been affixed to the Note.

Appellant also disputes the trial court's conclusion that Mill City's mere possession of the Note indorsed in blank gave it enforcement rights; Appellant suggests that a party seeking to enforce a note still has to prove his rights as a transferee. We disagree.

Since the note securing a mortgage is a negotiable instrument, "then there is no risk of a debtor twice being held to account for a single debt." *Murray*, 63 A.3d at 1263. This Court has found that the Pennsylvania UCC provides that a debtor who satisfies his obligations under a negotiable

instrument cannot be required to do so again, even if the recipient of the debtor's performance is not the holder of the note in question. *Id.* (citing 13 Pa.C.S.A. § 3602(a)).

As such, if a mortgagee can establish that it holds the original note, which is endorsed to it or endorsed in blank, it will be entitled to enforce the note "even if there remain questions as to the chain of possession of the note." *Murray*, 63 A.3d at 1268. *See also Gerber v. Piergrossi*, 142 A.3d 854, 862 (Pa. Super. 2016) (citing *In re Walker*, 466 B.R. 271, 285–286 (Bankr.E.D.Pa. 2012) (stating "[i]f a borrower cannot demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment, the borrower lacks standing to raise the issue") (citation omitted)).

As Mill City is the holder of the Note indorsed in blank by the Allonge, we agree with the trial court's finding that Mill City has standing to enforce the Note and Mortgage against Appellant.

Appellant also argues that the trial court's judgment in favor of Mill City was "based on hearsay records from third parties," referring to records from the previous owners of the Note and Mortgage which were offered to prove the details of Appellant's mortgage, loan history, payment history, amount due, and default." Appellant's Brief, at 25, 29. As such, Appellant is challenging the trial court's discretion in allowing Mill City to offer the testimony of a sole witness, Ms. Gioello, to authenticate documents related to

the Mortgage and Note which originated from records created by the prior companies.

Our standard of review is well-settled:

"[t]he admissibility of evidence is within the sound discretion of the trial court, which appellate courts will not disturb absent an abuse of discretion or error of law. An abuse of discretion ... requires demonstration that the lower court's decision was a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support from the evidence or the record so as to be clearly erroneous.

*Jones v. Foods on First III, Inc.*, 345 A.3d 231, 245 (Pa. Super. 2025) (quoting *Viall v. Garvin*, 318 A.3d 905, 922 (Pa. Super. 2024) (citation omitted)).

Our rules of evidence provide that "a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Pa.R.E. 602. Specifically, the rules evidence set forth a general rule of the inadmissibility of hearsay statements, which includes a "written assertion" that the "declarant does not make while testifying at the current trial or hearing" and "a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801, 802. A hearsay statement is not admissible unless the proffered statement falls within an established hearsay exception. *Hagelauer v. Main Line Emergency Med. Assocs., LLC*, 339 A.3d 483, 488 (Pa. Super. 2025) (citing *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 471 (Pa. 2021)).

The parties do not dispute that the records maintained by the prior servicers of the Note and Mortgage in this case constitute hearsay as Mill City's

record custodian, Ms. Gioello, admitted she did not have personal knowledge of how these records were kept by prior servicers.

However, the trial court found these records met the business records hearsay exception set forth in Pennsylvania Rule of Evidence 803(6), which states that, regardless of whether the declarant is available as a witness, "[a] record (which includes a memorandum, report, or data compilation in any form) of an act, event[,] or condition" is excludable from the rule against hearsay if:

> (A) the record was made at or near the time by - or from information transmitted by - someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6). "In regard to the business records exception, the circumstantial trustworthiness arises from the regularity with which business records are kept and the reliance that businesses place on the accuracy of those records." *Bayview Loan Servicing LLC v. Wicker*, 206 A.3d 474, 483 (Pa. 2019).

In *Wicker*, our Supreme Court reviewed a similar claim in assessing whether the trial court abused its discretion in allowing the records custodian of the mortgage assignee to "testify to exhibits which included information recorded by a prior loan servicer under the business records exception." *Id.* at 482. The Supreme Court found that the trial court properly exercised its discretion in finding such records admissible even though the testifying records custodian was never employed by the prior servicer as the records custodian testified that he was personally acquainted with the extensive onboarding process employed by the current servicer, which was used to verify the prior servicer's records and confirm their accuracy. *Id.* at 486.

The *Wicker* court distinguished the facts before it from the factual circumstances presented in *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386 (Pa. Super. 2015), in which this Court affirmed the trial court's refusal to allow a mortgage assignee filing a foreclosure action to admit documents related to the mortgage and note which derived from records created by the prior companies. The *Wicker* court noted that the trial court in *Pautenis* properly exercised discretion to exclude the records which "totally lack[ed] trustworthiness" given there were "several discrepancies on the face of the records." *Wicker*, 206 A.3d at 486.

As such, the Supreme Court in *Wicker* emphasized that it would:

continue to allow our trial courts to utilize their broad discretion in evidentiary matters by applying the business records exception of [Pa.R.E.]803(6) and the [Uniform Business Records as Evidence] Act if the witness "can provide sufficient information relating to the preparation and maintenance of the records to

justify a presumption of trustworthiness" subject to the opponent rebutting the evidence with any other circumstances indicating a lack of trustworthiness.

*Id.* at 486 (citation omitted).

In this case, the trial court found that Mill City has satisfied the business records exception to allow the admission of the prior servicers' records given Ms. Gioello, litigation representative at Mill City's loan servicer, attested to her knowledge of Fay's onboarding process which engaged in extensive review of the records of the prior servicing companies. Ms. Gioello provided the following information about the onboarding process of a loan from a prior servicer:

> It's a data transfer of information received from the prior servicer which is their full business records. There are 410 data points that are checked for accuracy. The information is first loaded into a test system called LLB, which means Loan Level Boarding. It's a Black Knight software, so they're very well known in the industry.
>
> The information is brought side-by-side. Our onboarding team checks for accuracy. If … there is anything that doesn't line up, they go back to the prior servicer and correct any discrepancies before the loan is boarded onto our live system of record which is called MSP.

N.T. at 67-68. Further, the trial court noted that "no apparent errors or discrepancies existed in the underlying documents nor were any facts contested by [Appellant]." T.C.O., at 8.

Thus, Mill City provided sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness whereas Appellant failed to rebut this evidence by showing the records indicated a lack of trustworthiness. Accordingly, we conclude that the trial

court properly exercised its broad discretion to allow the admission of the contested exhibits under the business records exception.

Appellant also argues that the trial court's judgment in favor of Mill City is not supported by sufficient evidence or the weight of the evidence as he alleges that Mill City did not establish its right to enforce the loan modification. Appellant alleges that Mill City failed to prove that the modification was assigned to a new lender as the loan modification did not have a separate endorsement or attached allonge.

However, Appellant does not offer any authority to support his claim that the loan modification was required to have a separate endorsement before the mortgage was transferred to a new servicer. Other than the assertion above, Appellant has failed to develop this claim further. As such we find this argument to be waived for lack of development. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Heffelfinger v. Shen*, 342 A.3d 711, 721 (Pa. Super. 2025).

Lastly, Appellant argues that the trial court erred in denying his request to file a response to Mill City's proposed findings of fact and conclusions of law. However, other than this bald assertion, Appellant does not explain why this allegation of error entitles to him to relief. As such, this claim is also waived due to Appellant's failure to develop it on appeal. *See Heffelfinger*, *supra*.

For the foregoing reasons, we affirm the trial court's judgment in favor of Mill City.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/14/2026